(85 Misc. Rep. 347)

### STEVENS et al. v. LIPPMAN.

(City Court of New York. April, 1914.)

CORPORATIONS (§ 269*)—INSOLVENCY—STOCK SUBSCRIPTION—ENFORCEMENT OF LIABILITY.

> Where, in an action by the receivers of a defunct foreign corporation to recover a balance due on a stock subscription, it is conceded that defendant's entire dealings were with one H. and his representative, and the corporation's president in a letter to defendant has stated that a contract made by the company with H. for the sale of stock had been canceled, a verdict directed for plaintiff, subject to the opinion of the court, under Code Civ. Proc. § 1185, will be set aside, and judgment directed for defendant, on the ground that there was no due authorization by the company for subscriptions to its capital stock.

> [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 887, 888, 980, 1149–1159, 2277; Dec. Dig. § 269.*]

Action by Robert Nelson Stevens and another, as receivers of the Empire Casualty Company, against Leopold J. Lippman, to recover a balance due on a stock subscription. Judgment for defendant.

Williams, Folsom & Strouse, of New York City, for plaintiffs.
House, Grossman & Vorhaus, of New York City (Edward S. Kaufman, of New York City, of counsel), for defendant.

GREEN, J. This action is brought by the plaintiffs as receivers of a defunct corporation, the Empire Casualty Company, to recover a balance claimed to be due upon a subscription for 50 shares of the capital stock of the said corporation, and which subscription was executed by the defendant. Upon the trial a verdict was directed for the plaintiffs, subject to the opinion of the court, and a motion to set aside that direction and for judgment for the defendant is now before the court.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The defendant resists the enforcement of plaintiffs' alleged cause of action upon the ground, first, that no resolution of the plaintiff company was ever duly adopted authorizing the subscription for the stock, and that in fact what purports to be such resolution is an absolute sale of nearly the whole of the capital stock to an individual with whom defendant had his transactions, and who was the person to whom the subscription was originally given; second, that it appears from the evidence without contradiction that the whole of the capital stock had not been subscribed for; and, third, that the plaintiff is not in a position, by reason of the appointment of the receivers and the insolvency of the corporation, to carry out its contract, to wit, it cannot issue nor deliver the certificate of stock. It must be borne in mind that this action is not one brought by the receivers for money to pay the debts of the corporation incurred for incorporation, organization, and kindred obligations; but it is an action upon the subscription for the stock and for the full amount of the subscription. The answer interposed by the defendant is substantially a general denial, and consequently the second ground of defendant's motion, that the whole of the capital stock had not been subscribed for, is untenable, for to be available it must be specially pleaded, for, as has been said:

"It has long been the rule in this state, as in many others, that prima facie subscribers to the stock of a corporation are not bound to pay assessments upon their stock unless the whole capital of the company has been subscribed. * * * It is equally well settled that a subscriber may, in various ways, waive the implied condition attached to his subscription that he shall be liable to calls only when all the stock has been subscribed for, and among the acts generally considered as such a waiver is the payment of prior assessments without objection. * * * And that objection, if available and not waived, should be taken by answer." Myers v. Sturgis, 123 App. Div. 472, 108 N. Y. Supp. 529.

The first ground, however, that there was no due authorization for subscriptions to the capital stock, and that the capital stock was actually sold to an individual with whom defendant had all his transactions, raises, however, a serious question as to plaintiffs' right to recover in this action. Plaintiffs' allegation in the complaint is to the effect that after the organization of the Empire Casualty Company, and prior to the subscription for the stock by the defendant, "pursuant to resolutions of the board of directors of said corporation adopted at a regular meeting of such board of directors, held upon due notice, books of subscription to the capital stock of such corporation were duly opened," and in support of that allegation plaintiffs introduced in evidence the minutes of a directors' meeting which contained the following entry:

"The chair stated the object in calling this meeting was to consider a proposition from J. W. Hardy, of Philadelphia, Pa., to sell 20,000 shares of the company's capital stock. Mr. Hardy's proposition was in writing, was placed before the board for consideration and discussion. On motion of C. T. Hiteshew, seconded by D. A. Beatty, the proposition was accepted with a few minor changes."

And the secretary was instructed to so inform Mr. Hardy. It is conceded in this case that defendant's entire dealings were with Hardy

and with Hardy's representative, one Farnham, and in a letter from the plaintiff's president to the defendant he stated that the company had made a contract for the sale of stock with Hardy, but that as he did not fulfill his engagement they canceled the contract, and, as the president expressed it:

"Neither Messrs. Hardy & Co. nor H. G. Farnham are longer in our employ in any capacity."

I am of the opinion that there was no privity of contract between the plaintiff company and the defendant, and the payment of one installment by check did not create that privity, and whatever rights accrued under the subscription for the stock accrued to Hardy, because the stock subscribed for by defendant had been actually sold by the plaintiff company to Hardy. There is no claim made, at least there is no evidence, that Hardy was to have acted as an agent or an underwriter for the company; but the facts disclosed show clearly and conclusively that he purchased the stock for which the defendant subscribed, and Hardy's agent obtained defendant's subscription, and so far as the evidence shows Hardy is still the owner of the stock, and the only intimation to the contrary is the rather broad declaration of the president of the plaintiff company that Hardy did not fulfill his engagement and that they consequently canceled the contract with Hardy. I also am convinced from the evidence that there was no due authorization by the company for subscriptions to the capital stock, and consequently that the defendant ought not to be held bound by his contract, which, if the view I take be correct, would be unilateral and not binding against the plaintiff if the defendant sought enforcement thereof.

The defendant further urges that the plaintiff is not in a position to issue the stock, being in the hands of receivers, and I am of the opinion that that contention is also sound. As is said in Cook on Corporations, "the corporation must be in a position to issue the certificate" (section 192), and it is evident that it is not. It would be manifestly unjust to compel this defendant to pay nearly $800 for something which he cannot obtain, and which, even if received, would be worthless. The company never transacted business, and never received permission so to do. It was organized under the laws of Virginia, and it was sought, by raising funds on stock subscriptions, to do business in the state of Pennsylvania. To do this the company sold the stock outright to Hardy, and now upon the same subscription given to Hardy the receivers seek to enforce this claim. As intimated and stated by the court at the trial, when a verdict for the plaintiff was directed, it was not in sympathy with the direction, and I am now convinced that such direction was error.

The verdict having been directed subject to the opinion of the court, under section 1185 of the Code, I do now set aside the said verdict and direct judgment for the defendant. Plaintiff may have 10 days' stay and 30 days to make a case.

Judgment accordingly.